UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-107 |
| | ) | (PHILLIPS/SHIRLEY) |
| RALPH T. O'NEAL, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. The Defendant is charged in a ten-count Indictment [Doc. 93], which contends that the Defendant, *inter alia*: conspired to distribute cocaine; aided and abetted in the distribution of cocaine; distributed cocaine within one thousand feet of a public elementary school; aided and abetted in the distribution of "crack" cocaine; distributed "crack" cocaine within one thousand feet of a public elementary school; and knowingly possessed a firearm despite being a convicted felon.

On August 4, 2008, the Defendant, through previous counsel Attorney Jonathon Cooper, filed a Motion to Suppress Statements [Doc. 18]. This motion alleges that the Defendant was interrogated prior to being informed of his Miranda rights, and on this basis, the motion moves the Court to suppress any statements that were made to officers in the period following the Defendant's arrest. The Government responds that the Defendant was advised of his Miranda rights and he voluntarily waived those rights. [Doc. 83].

In the time since this motion was filed, the Defendant has been appointed a number of

attorneys, all of whom the Defendant had disagreements with that escalated to the point of destroying the attorney-client relationship. As a result of this inability to work with counsel and his strong desire to represent himself, the Court granted the Defendant's request that he be allowed to represent himself in this matter by an order dated April 24, 2009. Because of the succession of attorney appointments in this case and eventual granting of the Defendant's request to proceed pro se, argument on the Motion to Dismiss was delayed significantly.

Nonetheless, the parties appeared before the Court for a motion hearing on June 24, 2009, to address this motion and a number of other pending motions. Assistant United States Attorney David Lewen ("AUSA Lewen") was present representing the Government. The Defendant was present representing himself, and Attorney Steven G. Shope was present serving as elbow counsel if the Defendant needed his assistance. The Court heard the evidence presented and the arguments of the parties on the motion. The Court took the motion under advisement on June 25, 2009.

## I. FACTS

The Court heard from a single witness at the hearing, Federal Bureau of Investigation ("FBI") Special Agent Andrew Chapman ("Agent Chapman"). His testimony was as follows:

Agent Chapman stated that he has been employed as an FBI agent in Knoxville, Tennessee, for approximately twelve and a half years. He recalled arresting the Defendant in Dickson, Tennessee, a town west of Nashville, Tennessee, on June 29, 2008. Agent Chapman stated that the other agencies and officers involved in arresting the Defendant included at least two local Dickson police officers, a Tennessee state trooper, Drug Enforcement Agency ("DEA") Agent James Blanton ("Agent Blanton"), and himself. Agent Chapman stated that he was wearing a navy FBI vest with gold lettering, Agent Blanton was wearing a black DEA jacket or vest with gold lettering, and other

officers were wearing clothing with local police emblems.

Agent Chapman stated that officers arrived at the home of the Defendant's mother at about 8:00 p.m.; he explained that, while it was not dark when officers arrived, it was dark by the time they left the home. Agent Chapman stated that he did not draw his weapon at any time when arresting the Defendant. He described the incident as completely uneventful and unremarkable. When asked whether the Defendant resisted arrest, Agent Chapman stated that the Defendant "was a complete gentleman." Agent Chapman recalled that upon the agents' arrival the Defendant made a comment, to the effect of, "FBI, DEA, I know it's over." Agent Chapman recalled that the Defendant was initially handcuffed behind his back, but his hands were later handcuffed in front of him for his comfort.

Agent Chapman explained that upon arrest, the Defendant wanted to talk about the arrest; Agent Chapman recalled the Defendant first wanting to talk while he and the agents were on the front driveway of the home. Agent Chapman explained that in response to the Defendant's desire to discuss the arrest, he stated that they had a thirty to forty minute drive back to the Metro Davidson County Detention Center and suggested that during that drive the Defendant and the agents discuss something else, such as sports. Agent Chapman recalled that the Defendant brought up discussing the arrest several more times, but Agent Chapman said he told the Defendant to hold-off on such discussion.

Agent Chapman explained that once they arrived at the detention center in Nashville, the Defendant was allowed to use the restroom, and Agent Chapman noted that a local officer gave the Defendant a bottle of water. Agent Chapman stated that the Defendant was taken to a prisoner interrogation room. Agent Chapman said that Agent Blanton, Detective Kris MyNatt ("Det.

Mynatt"), the Defendant, and himself were present in the interrogation room. Agent Chapman stated that he read the Defendant his Miranda rights from a form. AUSA Lewen presented Agent Chapman with a copy of an Advice of Rights form dated June 29, 2008. Agent Chapman identified this form as the one he had used to advise the Defendant of his rights, and it was accepted into evidence as **Exhibit 3**.

Agent Chapman noted that his signature appeared at the bottom of the form along with the Defendant's signature. Agent Chapman stated that the Defendant did not appear to be under the influence of alcohol at the time that he signed the Advice of Rights form and noted that he appeared cogent. The time noted in the upper-right corner of the Advice of Rights form was 10:10 p.m., but the time noted in the lower-left corner next to the witness signature lines was 10:26 p.m. Agent Chapman explained that during this sixteen minute period the agents thoroughly explained the Defendant's rights to him. Agent Chapman said that the Defendant wanted to know about his rights and that the agents explained to the Defendant that a criminal complaint would likely be issued against him the next day. Agent Chapman confirmed that the Defendant signed the Advice of Rights form while acting of his own free will. Agent Chapman confirmed that agents did not force the Defendant to sign the form. Agent Chapman stated that, after the Defendant signed the Advice of Rights form, the agents interviewed the Defendant to ascertain the facts surrounding the Defendant's alleged criminal activity.

AUSA Lewen presented Agent Chapman a document entitled "Report of Investigation," which stated that it was completed by Agent Blanton on July 1, 2008. Agent Chapman recognized the document, and it was received into evidence as **Exhibit 2** without objection. Agent Chapman confirmed that the Report of Investigation summarized the Defendant's post-arrest statements.

4

Agent Chapman stated that the Defendant has been housed in the Blount County Detention Center since he was returned to this district. Agent Chapman noted that Blount County Detention Center records inmate visits. Agent Chapman explained that on July 10, 2008, Co-Defendant Michael Currier ("Co-Defendant Currier") visited the Defendant at the Blount County Detention Center, and Agent Chapman testified that he obtained a recording of this visit. AUSA Lewen presented Agent Chapman with a disc labeled "Blount Co. Visit 7-10-08," which Agent Chapman confirmed contained the recording of the visit, and the disc was admitted into evidence as **Exhibit 4** without objection. Agent Chapman testified that the disc contained a conversation between the Defendant and Co-Defendant Currier about the Defendant's arrest and repeated conversations about the two's fidelity to one another. Agent Chapman confirmed that the Defendant and Co-Defendant Currier discussed Agent Chapman and Agent Blanton and how they appreciated the agents' decent treatment toward them.

Thereafter, a portion of the contents of the disc were played. At approximately 00:05:15 on the disc, the Defendant states that he waived his rights without making mention of any coercion. At approximately 00:23:56-24:00, Co-Defendant Currier stated, in substance, "Andy and James are nice guys," to which the Defendant responds in agreement. Agent Chapman confirmed that the reference to "Andy" was to himself and the reference to "James" was to Agent Blanton.

On cross-examination, Agent Chapman confirmed that he has taken an oath to uphold the Constitution of the United States. Agent Chapman stated that he did not have an arrest warrant for the Defendant at the time he arrested the Defendant. Agent Chapman estimated that he has completed hundreds of arrests. Agent Chapman confirmed that no indictment had been issued against the Defendant at the time Agent Chapman arrested him. In regards to the Report of

5

Investigation admitted as Exhibit 2, Agent Chapman confirmed that it incorrectly states that the Defendant was arrested on June 30, 2008. Agent Chapman did not recall telling the Defendant that he was tired and ready to go home during the interview in Nashville, but Agent Chapman did note that the interview continued into the next day. Agent Chapman estimated that in total the interview lasted two hours.

## II. FINDINGS OF FACT

The only evidence before the Court on the issues presented herein is Agent Chapman's testimony and the exhibits described above. Because the Defendant has presented no evidence to dispute the above testimony, the Court finds this testimony to be a reliable summary of the events surrounding the Defendant's arrest.

## III. ANALYSIS

The Fifth Amendment of the United States Constitution protects against a defendant being "compelled in any criminal case to be a witness against himself." In order to further this protection and other constitutional rights, the Supreme Court of the United States has held that a suspect must be informed of certain constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), prior to being subjected to custodial interrogation or its equivalent. Id. at 444-45. As the Court in Miranda explained, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. These safeguards include advising the suspect of his or her right to remain silent, that any statement made may be used against him or her, and that the suspect has a right to have an attorney, either retained or appointed, present at questioning. Id. at 445.

However, the safeguards outlined in Miranda attach only where a defendant is subjected to custodial interrogation. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. There is ample case law examining when each of the two prongs of custodial interrogation–custody and questioning–are present. However, in this case, because of the undisputed facts presented to the Court, the inquiry is fairly straightforward.

The Court will first examine whether the Defendant was placed in custody on May 29, 2008. It is well-established that for purposes of determining whether a person was "in custody" at a particular time, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984); United States v. Mahar, 801 F.2d 1477, 1499 (6th Cir.1986). In the present case, numerous federal agents and members of local law enforcement arrived at the home of the Defendant's mother. The Defendant was handcuffed and informed that he was to be transferred to a police station in Nashville for processing and questioning. In his statement, Agent Chapman recalled that the Defendant was arrested at his mother's home, and neither Agent Chapman, nor the Government, appear to dispute that the Defendant was in fact under arrest shortly after officers and agents arrived at the home. In light of these facts, the Court finds that a reasonable person in the Defendant's position would have understood that he was in custody and not allowed to leave.

Therefore, based upon the totality of the circumstances surrounding the Defendant's detention, including his being handcuffed and placed in an agent's vehicle in the presence of numerous law enforcement officers, and the Government's apparent concession that the Defendant was arrested at his mother's home, the Court finds that the Defendant was placed under arrest and

7

was taken into custody at his mother's home in Dickson, Tennessee.

The Court next turns to the question of whether the Defendant was interrogated while he was in custody, but prior to being informed of his rights pursuant to Miranda. For purposes of this inquiry, " ['interrogation'] refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Nonetheless, statements of any kind that are volunteered by the suspect do not implicate Miranda warnings. Id. at 300.

The evidence before the Court indicates that Agent Chapman and his colleague were conscientious about avoiding interrogation or its functional equivalent prior to advising the Defendant of his Miranda rights. Agent Chapman recalled specifically telling the Defendant that they should not discuss the case until they arrived in Nashville, and Agent Chapman attempted to avoid further discussion on the subject by suggesting that they discuss sports or another unrelated subject during the ride to Nashville. Agent Chapman actively sought to avoid anxious chatter about the case from the Defendant, and any statements the Defendant made were voluntary and were not products of words or actions by Agent Chapman.

Upon their arrival at the Metro Davidson County Detention Center in Nashville, the Defendant was allowed to attend to his personal needs and was thereafter advised of his rights and questioned about this case. There is no evidence that officers or agents at the detention center directed any words toward the Defendant or acted in anyway to provoke incriminating statements from the Defendant prior to advising him of his Miranda rights. Thus, the Court finds that between the time of his arrest and when he was advised of his rights, the Defendant was in custody.

However, he was not subjected to custodial interrogation, because no interrogation took place. Therefore, Agent Chapman and other law enforcement officers were not required to advise the Defendant of his rights under Miranda any earlier than they did.

Finally, the Court will examine the validity of the Defendant's waiver of his Miranda rights. A waiver under Miranda must be voluntarily given, and the analysis of whether the waiver was voluntary mirrors the analysis of whether a confession was voluntary under the Fourteenth Amendment to the United States Constitution. Colorado v. Connelly, 479 U.S. 157, 169-70 (1986). Further, the waiver must be knowing and intelligent. Garner v. Mitchell, 557 F.3d 257, 260-61 (6th Cir. 2009). The Government bears the burden of proof and must show by a preponderance of the evidence that a defendant voluntarily waived his Miranda rights. Connelly, 479 U.S. at 168.

In the present case, all the evidence before the Court indicates that the Defendant voluntarily made a knowing and intelligent waiver of his rights under Miranda. The Court has examined the Advice of Rights form, Exhibit 3, and has considered Agent Chapman's testimony regarding his advising the Defendant of his rights and the execution of the form. This evidence supports a conclusion that the waiver was knowing, intelligent, and voluntary. Further, the Court heard the Defendant himself state, on the recording of his conversation with Co-Defendant Currier, that he waived his rights at the time of questioning. In this conversation, the Defendant never mentioned any type of coercion by law enforcement agents and agreed with statements that Agent Chapman and Agent Blanton were not difficult to deal with. The Defendant has presented no testimony or evidence that indicates the Defendant was coerced or did not understand the nature and consequence of waiving his rights.

Based on the evidence presented, the Court finds by a preponderance of the evidence and

9

based on the totality of the circumstances, that the Government has established by clear and positive testimony that the Defendant made a knowing, intelligent, and voluntary waiver of his Miranda rights.

## V.  CONCLUSION

Accordingly, the Court finds that, while the Defendant was taken into custody upon the agents and officers' arrival at the house in Dickson, he was not subjected to interrogation until the questioning at the detention center in Nashville. Therefore, the Defendant was not subjected to custodial interrogation prior to his interview at the detention center, and no Miranda warnings were required until that time. Further, the Court finds Agent Chapman advised the Defendant of his Miranda rights prior to the interview at the detention center, and the Defendant made a voluntary, knowing, and intelligent waiver of his rights before the custodial interrogation began. The Court finds the Government has demonstrated, by a preponderance of the evidence, through clear and positive testimony that the Defendant was properly advised of his Miranda rights prior to custodial interrogation and that he voluntarily waived these rights, and thus, the Court finds there are no grounds for suppressing the Defendant's statements.

Therefore, it is **RECOMMENDED** that the Defendant's Motion to Suppress [Doc. 18] be **DENIED**.[1]

Respectfully Submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).